AteiNsoN, J.,
delivered the .opinion of the court.
This is a suit for $227.86 brought by Spencer N. Phillips, who during the time mentioned in his petition was a private in the United States Marine Corps. It is claimed by plaintiff that for 651 days, between August 9, 1805, and May 29, 1907, he served as a clerk while on recruiting service for the Marine Corps, and because of such service with recruiting parties he is entitled to 35 cents per day extra compensation.
Reliance is placed upon section 1287 of the Revised Statutes and the act of July 5, 1884 (23 Stats., 110), to sustain the claim of plaintiff. Said section reads as follows:
“When soldiers are detailed for employment as artificers or laborers in the construction of permanent military works, public roads, or other constant labor of not less than 10 days’ duration, they shall receive, in addition to their regular pay, the following compensation: Privates working as artificers, and noncommissioned officers employed as overseers of such work, not exceeding 1 overseer for 20 men, 35 cents per day, and privates employed as laborers, 20 cents per day. This allowance of extra pay shall not apply to the troops of the Ordnance Department.”
The act of July 5, 1884, supra, is in the following lan-gauge:
“ That $250,000 of this sum, or as much of it as shall be necessary, shall be set aside for the payment of enlisted men on extra duty at constant labor of not less than 10 days, and such extra-duty pay hereafter shall be at the rate of 50 cents per day for mechanics, artisans, school teachers, and clerks at Army, division, and department headquarters, and 35 cents per day for other clerks, teamsters, laborers, and others.”
Section 1612 of the Revised Statutes reads:
(Pay of Marine Corps.) “The officers of the Marine Corps shall be entitled to receive same pay and allowances, *294 and the enlisted men shall be entitled to receive the same pay and bounty for reenlisting as are or may be provided by or in pursuance of law for the officers and enlisted men of the grades in the Infantry of the Army.”
Section 1285 of the Revised Statutes provides that:
“ Working parties of soldiers shall be detailed for employment as artificers or laborers, in the construction of permanent military works or public roads, or in other constant labor only upon the written order of a commanding officer, when such detail is for 10 or more days.”
The question to be determined is, Was the plaintiff detailed as a “clerk” within the meaning of the law? It is shown that he was detached from his company and placed upon recruiting service by proper procedure under the authority of the act of February 2, 1901 (31 Stats., 156), which reads:
“That the Secretary of War is authorized to detach from the Army at large such number of enlisted men as may be necessary to perform duty at the various recruiting stations, and while performing such duty one member of each party shall have the rank, pay, and allowances of sergeant and one the rank, pay, and allowances of- corporal of the arm of the service to which they respectively belong.”
This act organizing the recruiting service makes no mention of extra-duty pay other than that of the promotion of two of the members of each party to the noncommissioned rank of sergeant and corporal. The custom of the service (Finding VIII) has invariably been not to pay any member of a recruiting party any additional compensation.
Recruiting duty is an agreeable and attractive assignment, and the requisite qualifications are placed upon a high plane, so that only the most intelligent and those of soldierly bearing may secure such designation. That this service is purely military must be conceded. It is the recruiting parties that keep the military organization to which they belong intact and cause it to be maintained on a high standard of efficiency by securing young men to enlist in the military service. It can not be said that this effort to bring to the Army the youth of the Nation is less “ military” than is the necessary but less martial position of *295 company cook or regimental baker. All of these functions are essential to the maintenance and welfare of an army.
The Congress, in its supervision of the Nation’s Treasury, has aimed to be just in its allowances to the military arms of the Government. It demands of the soldiers a willing discharge of their military duties without additional reward other than their prescribed compensations. In its fairness to the Army and Navy it has authorized additional or extra-duty pay for services of extraordinary or nonmilitary character. It provides in the laws governing such bodies that when soldiers are detailed for extra duty as clerks, teamsters, laborers, etc., they shall be paid an additional wage of 35 cents per day. But while so doing the Congress carefully protects the Treasury of the Nation by prescribing specifically the method to be pursued to bring the soldier within the zone of extra-duty pay. Not every soldier who renders a service slightly nonmilitary is within the reach of extra-duty pay. In such a vast organization as the country’s military there would be constant turmoil over determinations of character of duties had not the Congress anticipated it by distinctive legislation; and this, in our judgment, has been done by the enactment of section 1235 of the Revised Statutes, which clearly wipes away surmises that might arise from indefinite designation when it says:
“Working parties of soldiers shall be detached for employment as artificers or laborers, in the construction of permanent military works or public roads, or in other constant labor only upon written order of a commanding officer when such duty is for 10 or more days.”
The safeguard is here seen and the fixing of responsibility therefor is specific.
In the case at bar it does not appear that the plaintiff was ever giyen any written order from any commanding officer having authority under the law so to do assigning him to extra duty as a clerk, and the muster roll of his company does not show any assignment as on extra duty as clerk, but it does show him as on duty at recruiting offices in Cincinnati, Ohio, and Augusta, Ga.
In the act of April 19, 1910 (36 Stats., 312, 324), it is specifically provided that in all cases thereafter arising, per- *296 taming to the dates of the enlistments of the volunteer forces, the decisions of the War Department shall be conclusive.
While the above act relates only to the War Department and binds the courts to accept its official records as final as to the dates of the enlistments of volunteers, yet it is persuasive, although not binding, that the records of the Marine Corps should likewise be regarded as conclusive. But this is not all. The findings show that it has been the unvarying custom of both the Army and the Marine Corps to not allow extra-duty pay for privates detailed for the recruiting service. As we have hitherto stated, the only additional compensation allowed to them is the increased pay of corporals and sergeants, which ranks are given them by the act of 1901, supra, while on recruiting service, and this act is not superseded by the acts granting extra pay for extra duty. Both this court and the Supreme Court have frequently decided that departmental constructions of long standing should not be overruled by the courts except for the most cogent reasons. (Sweet v. United States, 34 C. Cls., 377, 387; United States v. Johnson, 124 U. S., 377, 387, and cases there cited.) In the case we are considering it is not shown that plaintiff was assigned to extra duty as a clerk, nor is it shown by the muster rolls of his company that he, during his absence from his regular command, was assigned to or engaged in clerical work at recruiting stations. It is not denied, however, that he did clerical work while absent from his command, but it is denied that he was assigned by a written order to such duty, which fact is established by the records of the Marine Corps and the muster rolls of his company. He, therefore, does not come within the provisions of the act of July 5, 1884, the act of February 2, 1901, supra, or section 1287 of the Bevised Statutes.
Much stress is laid by jilaintiff upon the fact that the order detailing him for recruiting service was in writing. While tlris is true, yet it is shown by Finding IY that this written order was a regular form of detail for recruiting service only and not one designating him as a clerk. Under said written order he proceeded from Philadelphia to Cincinnati, and after he had reported to the recruiting officer, *297 as shown in Finding V, he was examined by this officer as to his qualifications for clerical duties in the recruiting service. Subsequent to this examination he was assigned to clerical work, but no claim is made that the assignment was in writing, as required by the statute and the Army and Marine Corps regulations, but, on the contrary, it is shown by the findings that the order was a mere oral direction or command. We do not raise the question as to the authority of the recruiting officer to make the written order required by statute, because it does not appear that plaintiff claims that this officer made such an order.
In the case of Holthaus v. United States, decided May 6, 1907, the court held that where a private of the Marine Corps was detailed orally by an authorized commanding officer to act as clerk and was carried on the muster roll as “ clerk,” which roll the detailing officer was required by law to examine and certify, and which he did examine and approve, he was entitled to receive the extra-duty pay provided by statute for soldiers acting as clerks upon written orders from the commanding officers. It is clearly shown, therefore, that the court in that case considered the question whether or not the claimant was acting under a written order as a clerk, as shown by the muster rolls of his company, and, deciding that he was, granted him extra pay.
In this case, however, we find that the plaintiff was not acting as “ clerk ” upon any proper written authority, and are sustained in this conclusion by an official letter of the Adjutant General of the Army addressed to the Auditor for the Navy Department (Finding VIII) under date of September 29, 1910, wherein he says that * * * “no enlisted men of the Army receive any extra-duty pay for duty with recruiting parties at general recruiting stations.”
From what we have stated above we are of the opinion that the Congress intended only to grant extra-duty pay in exceptional cases and clearly prescribed the procedure to be followed in placing soldiers within the restricted sphere of extra compensation for services rendered by them to the Nation.
Our conclusion is that the plaintiff can not recover, and his petition is accordingly dismissed.